IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JUSTIN L. BURRELL, )
 )
       Petitioner, )
 )
v. ) Civil Action No. 04-345-KAJ
 )
STANLEY TAYLOR, )
Commissioner of the Delaware )
Department of Correction, )
and M. JANE )
BRADY, Attorney General )
of the State of )
Delaware, )
 )
       Respondents. )

## MEMORANDUM OPINION

———————

Darryl K. Fountain, Esquire; Counsel for Petitioner. (Mr. Fountain was counsel of record at the time this matter was submitted. A receiver, Randolph K. Herndon, Esquire, has since been appointed over his legal practice.)

Thomas E. Brown, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware; Attorney for Respondent.

———————

December 12, 2005
Wilmington, Delaware

JORDAN, District Judge

## I. INTRODUCTION

Currently before me is petitioner Justin L. Burrell's ("Burrell") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1.) For the reasons that follow, I will dismiss Burrell's § 2254 petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

As adduced at trial and reported by the Delaware Supreme Court on direct appeal, the facts of Burrell's case are as follows:

> On May 19, 1998, William Davis was living with Dan and Dolly Fenwick and their nine-year old son, ... Danny M. Fenwick, Jr. ("Danny") in a mobile home located north of Dover. Davis sold marijuana while he lived with the Fenwicks. He kept approximately $20,000 in cash in a safe under his bed. In April 1998, William Scott, Davis' former roommate, was present in the Fenwick's home when Davis removed $4,500 in cash from the safe to purchase a car.
>
> According to Justin L. Burrell, who was 17-years old in May 1998, William Scott developed a plan to steal Davis' money. Scott enlisted Burrell's assistance in the robbery plan. The two went to the trailer park on May 18, 1998, in order for Scott to point out the Fenwick residence to Burrell. Earlier, Scot drew a map of the intended robbery location and gave the map to Burrell.
>
> The morning of May 19, 1998, Scott gave Burrell a yellow backpack and a .380 caliber black and silver automatic handgun. Micah Cuffee, Scott's next door neighbor, was present in Scott's residence that same morning. Cuffee saw Scott give Burrell the backpack and noticed a small caliber automatic handgun fall out of the backpack. Burrell left Scott's home with the gun in the backpack and walked to the Fenwick residence.
>
> Disguised in a wig, hat, sunglasses, and his sister's makeup, Burrell knocked on the Fenwick trailer door on the morning of May 19, 1998. Danny M. Fenwick, Jr., who had stayed home from school with a sore throat that day, observed his mother answer the door. Burrell had the automatic handgun in his

1

      hand. He forced his way inside when Dolly Fenwick answered the door. Burrell knew that the money was under the bed in William Davis' room.

      Young Danny observed Burrell barge into the house, hit his mother with the handgun, and then drag Dolly Fenwick by the hair into Davis' bedroom. Danny Fenwick, Jr., heard Burrell repeat over and over, "Where is it?", when Burrell and Dolly Fenwick were in Davis' bedroom. Danny also heard Burrell say, "I'll shoot Danny, too." After a gunshot, Burrell said, "Oh, I better get out of here." When Burrell left, Danny went to a neighbor's house and the police were called.

*Burrell v. State*, 766 A.2d 19, 21-22 (Del. 2000).

On August 29, 1999, a Delaware Superior Court jury convicted Burrell of first degree felony murder, manslaughter, first degree robbery, second degree burglary, second degree conspiracy, and four counts of possession of a deadly weapon during the commission of a felony. The Superior Court sentenced Burrell to a mandatory term of life in prison without parole for the first degree felony murder conviction. The Delaware Supreme Court affirmed Burrell's convictions and sentence on direct appeal. *Id.*

On December 1, 2003, Burrell, represented by counsel, filed a motion in the Superior Court for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the motion on April 26, 2004. *Burrell v. State*, 2004 WL 2829038 (Del. Super. Ct. Apr. 26, 2004). Burrell filed a Notice of Appeal in connection with that denial on May 25, 2004.

In May 2004, while Burrell's post-conviction appeal was still pending before the Delaware Supreme Court, his attorney filed the instant habeas petition.[1] See D.I. 8, at 2. The petition asserts two claims: (1) the Superior Court erred in denying the claim in

---

[1] Darryl's problem

2

his Rule 61 motion that the prosecutor's closing argument was improper; and (2) the trial court erred when it admitted Danny Fenwick's out-of-court statement that he heard his mother say "Please don't shoot me" before Burrell shot her to death at close range.

The State filed an Answer, asserting that, although claim one was unexhausted, the Court should dismiss the entire petition as untimely. (D.I. 8.)

## III. DISCUSSION

As an initial matter, I note that the Delaware Supreme Court has affirmed the Superior Court's denial of Burrell's Rule 61 motion. *See Burrell v. State*, 871 A.2d 1127 (Table), 2004 WL 2050317 (Del. Super. Ct. Sept. 2, 2004). Consequently, both claims are exhausted, and I will proceed to the limitations issue.

### A. One Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after that date must comply with AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Burrell's § 2254 petition, dated May 29, 2004, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh*, 521 U.S. at 336. He does not allege, nor can I discern, any facts triggering the application of §§ 2244(d)(1)(B),(C), or (D). Accordingly, the one-year period of limitations began to run when Burrell's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Supreme Court affirmed Burrell's conviction and sentence on November 29, 2000, and the ninety-day period expired on February 27, 2001. Therefore, Burrell's conviction became final on February 28, 2001, and, to be timely, he was required to file a § 2254 petition by February 28, 2002. *See Wilson v. Beard*, 426 F.3d 653, 662-63 (3rd Cir. 2005) (holding that Federal Rule of Civil Procedure Rule 6(a) applies to the calculation of the AEDPA's one-year limitations period); *see, e.g., Harris v. Snyder*, 2002 WL 47895 (D. Del. Jan. 11, 2002).

Burrell did not file the instant habeas petition until May 28, 2004.[2] Therefore, his habeas petition is time-barred and should be dismissed, unless the time-period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir. 1999).

### B. Statutory Tolling

Section 2244(d)(2) of AEDPA specifically permits the statutory tolling of the one-year period of limitations:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). A properly filed state post-conviction motion tolls AEDPA's limitations period during the time the time the action is pending in the state courts, including any post-conviction appeals. *Swartz v. Meyers,* 204 F.3d 417, 424-25 (3d Cir. 2000).

Here, Burrell filed a Rule 61 motion in the Superior Court on December 1, 2003, almost two years after the expiration of AEDPA's limitations period. Although the Rule 61 motion was timely filed under Delaware law, it has no tolling effect under § 2244(d)(2).

### C. Equitable Tolling

It is well-settled that AEDPA's limitations period may be subject to equitable tolling, but federal courts apply this doctrine sparingly. *Miller v. New Jersey State Dept. of Corrections,* 145 F.3d 616 (3d Cir. 1998); *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir. 1998); *Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D. Del. Nov. 28,

---

[2] Burrell's petition is dated May 29, 2004, but it is time-stamped as having been received by the court on May 28, 2004.

2001). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. *Miller*, 145 F.3d at 618-19 (citations omitted); *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has specifically limited equitable tolling of AEDPA's limitations period to the following circumstances:

> (1) where the defendant actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

Burrell does not assert that any extraordinary circumstances prevented him from timely filing his habeas petition. Burrell was represented by counsel in the instant proceeding. Even if the untimely filing of the instant petition was due to a mistake in computing AEDPA's limitations period, such a mistake would not justify equitable tolling. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

Accordingly, I conclude that equitable tolling is not warranted in this case.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

I conclude that Burrell's petition for habeas relief is time-barred. I do not believe that reasonable jurists would find this conclusion to be debatable. Consequently, I decline to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Burrell's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.